UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
                                         :

DAVID PETERSON,                      :

                            :

                    Petitioner,      :

                            :             06 Civ.  41 (GEL)

                            :             06 Civ. 811 (GEL)

               -v.-                :

                            :         **OPINION AND ORDER**

GARY GREENE,                   :

                            :

                    Respondent.    :

                            :
------------------------------------------------------------------x

David Peterson, petitioner, pro se.

Robert T. Johnson, District Attorney, Bronx County
(Peter D. Coddington, Dana Levin, Assistant District
Attorneys, of counsel), Bronx, NY, for respondent.


GERARD E. LYNCH, <u>District Judge</u>:

      David Peterson, a New York State prisoner, seeks habeas corpus to challenge his

convictions, at two separate jury trials in the Supreme Court of New York for Bronx County, on

various charges of rape, forcible sodomy, sexual abuse, and robbery stemming from three

separate sexual assaults, and his resulting sentences to numerous consecutive sentences totaling

147 years in prison.  Because none of Peterson's many claims of error has merit, the petition will

be denied.

**BACKGROUND**

      On July 6, 1999, a Bronx grand jury indicted petitioner Peterson, alleging numerous

crimes in connection with separate sexual assaults on three victims: EW, ML, and NS.  The

charges relating to EW were severed and tried separately from those relating to the other two victims.

I.    Pre-Trial Proceedings

Before either case was tried, the trial court conducted an evidentiary hearing with respect to a motion brought by defendant challenging the legality of his arrest, and seeking to suppress resulting identifications of the defendant and various items seized in attendant searches.  At the conclusion of the hearing, the trial court denied the motion, and adhered to that ruling after the hearing was reopened to admit additional evidence.  In another pre-trial ruling, the court ruled that if Peterson testified at trial, the prosecution could cross-examine him about his 1982 conviction on six felony counts including rape, sodomy, and robbery, but could not question him about the factual details underlying those charges, or about an earlier adjudication of juvenile delinquency in connection with yet another rape.

II.    The First Trial

At the first of Peterson's trials, the victim ML, who was 20 years old, testified that at about 4:30 a.m. on June 16, 1999, she was ringing her mother's doorbell at a Bronx address when Peterson, whom she did not know, approached her, "acting like he's all nice," and asked for directions.  He then produced a knife and threatened to hurt her if she screamed.  She offered to give him money, and eventually gave him her earrings, but defendant forced her to walk to a nearby alley, put the knife to her face, and began touching her intimately.  At knife point, Peterson forced her to take his penis in her mouth, ejaculated on her face, and penetrated both her anus and vagina with his penis.  Peterson took ML's New York State identification card and warned her that if she reported the attack to the police he would have "his people" kill her or her family.  ML went to a friend's house and called the police.

NS, a second rape victim, who was 19 years old, testified that she left her house, also in the Bronx, between 3:30 and 4:00 a.m. on June 21, 1999, five days after the attack on ML, to smoke a cigarette. She noticed Peterson following her back into the building. Peterson first made an innocuous remark to explain his presence in the building, then produced a knife and forced NS to leave the building to a small enclosed area nearby, where he demanded that she either perform oral sex or submit to intercourse. Still at knife-point, she fellated Peterson, who demanded that she swallow his ejaculate. She gagged, however, spilling semen on her clothing. Peterson then threatened to rape NS as well, turned her around, and pulled down her pants, but as he approached her from behind with his penis exposed, a neighbor's dog appeared, interrupting the assault. After the dog's owner retrieved the dog, Peterson warned NS that he knew where she lived, and that if anything happened to him, his "boys" would "come after you and whoever else is in your house." She returned to her apartment and called the police.

On June 22, 1999, both ML and NS identified Peterson as their attacker at separate line-ups. A DNA expert matched Peterson's DNA with semen recovered from both victims. A search of Peterson's residence produced a folding knife, among other items.

Peterson did not testify, and called only a crime scene detective who testified that he had not recovered fingerprints or other evidence at the scenes. The jury found him guilty of one count of rape, two of sodomy, and two of sexual abuse in the attack on ML, and of one count of sodomy and two of sexual abuse in the attack on NS. He was acquitted of robbery and attempted robbery.

III.     The Second Trial

At Peterson's second trial, EW, an 18-year old high school student, testified that she was walking to her Bronx home in the early morning hours of June 20, 1999 (the day before the attack on NS), when she noticed Peterson, a man she had never seen before, approaching. He followed her into the elevator of her building, and physically prevented her from getting off the elevator. He then produced a knife and demanded her money, threatening that he would cut her if she yelled. Peterson then forced her to the roof at knife point.

Peterson pulled down EW's pants, forced her to kneel on all fours, and threatened her with oral or vaginal intercourse. He then pulled down her underwear and placed his finger, and then the tip of his penis, on her anus. However, he stopped without ejaculating, and told EW to get dressed. After grabbing a piece of mail from EW's bag, Peterson threatened "to get you and your family" if anything happened to him. EW carefully observed Peterson, noting his facial features, clothing, and jewelry. Peterson then left the roof, ordering EW to remain, but she ran down a different stairway, awakened her brother, and contacted the police.

Like the other victims, EW identified Peterson in a lineup. The warranted search of Peterson's residence produced, in addition to the knife referred to above, items of clothing, including a Yankee jacket, and a distinctive ring with the initial "P" that matched the clothing and jewelry EW had reported to the police on the morning of the attack.

Again, Peterson did not testify, but called a different crime scene investigator to testify to his inability to recover fingerprints at the crime scene. The jury found Peterson guilty of sodomy and attempted robbery.

IV.    Appellate and Post Conviction Proceedings

Peterson appealed both convictions to the Appellate Division, which affirmed both judgments in a single opinion.  People v. Peterson, 777 N.Y.S.2d 48 (1st Dept. 2004).  Leave to appeal to the Court of Appeals was denied.  3 N.Y.3d 710 (2004).

In 2006, Peterson sought a writ of error *coram nobis* in the Appellate Division, arguing that his appellate counsel was ineffective.  The writ was denied, in an unpublished opinion, on October 26, 2006.  (Levin Aff. Ex. 8.)  Leave to appeal was again denied.  8 N.Y.3d 848 (2007).

Meanwhile, Peterson filed separate petitions for habeas corpus challenging each conviction, and subsequently sought and was granted permission to amend his petitions to include the claims raised in his state *coram nobis* petition.

## DISCUSSION

Peterson raises a number of claims of constitutional error with respect to each of his separate convictions.  Since his claims with respect to the pre-trial and appellate proceedings affect both cases, and his claims of trial error apply only to each particular trial, the claims are most conveniently addressed in order of the state proceedings at which the alleged errors occurred.

I.    Claims Relating to the Pre-trial Proceedings

In both of his petitions, Peterson argues that his Fourth Amendment rights were violated by his warrantless arrest at his home, and that the trial court denied him his right to testify in his own defense by refusing his request to testify at the reopened suppression hearing.  These claims do not entitle him to relief.

Peterson's substantive Fourth Amendment claim is predicated on his contention that his arrest violated his rights under Payton v. New York, which requires the authorities to obtain a warrant before entering a person's home to effect an arrest. 445 U.S. 573, 576 (1980). Peterson raised this issue before his trials by seeking to suppress evidence allegedly obtained as the fruit of this arrest. The Appellate Division affirmed the trial court's conclusion, reached after a full evidentiary hearing, that Peterson's rights were not violated, because his home was entered lawfully by parole officers, who "were pursuing parole-related objectives when they exercised their lawful authority to enter defendant's apartment and place him in custody as a parole violator," and "did not act as agents of police." 777 N.Y.S.2d at 48. Accordingly, the state courts rejected Peterson's claims on the merits.

It has been firmly established for over thirty years that Fourth Amendment claims seeking the suppression of evidence may not be raised on federal habeas corpus review. Stone v. Powell, 428 U.S. 465, 494 (1976). So long as the state provides corrective procedures that give the defendant a full and fair opportunity to raise his claims in the state courts, and the petitioner is not prevented from using those procedures by an "unconscionable breakdown" in the state process, the federal courts may not grant habeas corpus based on such claims. Capellan v. Riley, 975 F.2d 67, 70-71 (2d Cir. 1992). New York permits defendants to raise Fourth Amendment suppression claims by pre-trial motion, Peterson availed himself of those procedures by filing such a motion, the state trial court provided a full evidentiary hearing and a reasoned decision rejecting the claims, and the Appellate Division reviewed that ruling and affirmed it on the merits. Accordingly, further review of Peterson's suppression claims in this Court is foreclosed.

Peterson next claims that he was denied his right to testify in his own behalf, see Rock v. Arkansas, 483 U.S. 44 (1987), at the suppression hearing. The facts underlying this claim are undisputed. At the original suppression hearing held on February 27, 2001, defendant expressly declined to testify or present any evidence. Shortly thereafter, the court denied the motion. Subsequently, successor counsel sought to reopen the hearing for further cross-examination of one of the detectives who had testified at the original hearing, on the ground that the defense may not have received a copy of the detective's grand jury testimony. The hearing was reopened for the specific purpose of permitting such additional cross-examination. At the conclusion of the hearing, counsel sought to call Peterson. Upon objection by the prosecutor that Peterson had had the opportunity to testify at the initial hearing and declined it, and that the purpose of the reopening was limited to the further questioning of the detective, the court denied the application, finding that no newly-discovered evidence had been elicited from the additional cross-examination of the detective. The court then ruled that the additional testimony of the detective did not change its findings or conclusions with respect to the suppression motion, and adhered to the prior ruling denying that motion.

The Appellate Division affirmed, holding that Peterson "was not deprived of his constitutional right to testify . . . since he had that opportunity at the original hearing but declined to [testify]," and the hearing was reopened only for the limited purpose of allowing additional cross-examination of a prosecution witness. 777 N.Y.S.2d at 48 (citations omitted). The court went on to note that Peterson's "proposed testimony was unrelated to the specific limited reason for the reopening, nor did it include any 'additional pertinent facts' ([N.Y. Crim.

Proc. L. §] 710.40[4]) that defendant could not have presented at the original hearing."  Id.
(second brackets in original).

Where, as here, the state courts have adjudicated a defendant's claim on the merits,
habeas corpus relief may not be granted unless the state courts' decision "was contrary to, or
involved an unreasonable application of, clearly established federal law, as determined by the
Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).  See Williams v. Taylor, 529 U.S.
362, 404-05 (2000).  Since there is no Supreme Court decision directly on point, habeas relief is
available only if the Appellate Division's decision was an "unreasonable application" of Rock v.
Arkansas.  In Rock, the Supreme Court held that "[l]ogically included in the accused's right to
call witnesses whose testimony is 'material and favorable to his defense' [citation omitted] is a
right to testify himself, should he decide it is in his favor to do so."  483 U.S. at 52, quoting
United States v. Valenzuela-Bernal, 458 U.S. 858, 867 (1982).  Rock, however, concerned the
defendant's right to testify in his own defense at trial, not at a suppression hearing.  Moreover,
Rock establishes that a defendant's right to testify at trial is unreasonably burdened by a per se
rule prohibiting the admission at trial of any of defendant's hypnotically refreshed testimony on
the ground that such testimony is always unreliable.  483 U.S. at 56.  Rock does not hold that a
defendant has an absolute right to reopen a closed trial – let alone a suppression hearing – in
order to offer testimony that could have been presented at the original hearing, but that the
defendant declined to offer at that time.  The Appellate Division's conclusion that it was a
reasonable exercise of discretion for the trial court to limit the reopened hearing to the narrow
purpose for which the reopening had been sought, where the defendant had been given an

unfettered opportunity to testify at the original hearing, is not an unreasonable application of Rock.

II.    Claims Relating to the First Trial

    A.    The Sandoval Hearing

Before trial, in accordance with New York procedure, see People v. Sandoval, 34 N.Y.2d 371, 373 (1974), the prosecution sought a ruling from the court permitting cross-examination of Peterson, should he elect to testify, regarding prior criminal acts of which he had been found guilty. The trial court precluded cross-examination with respect to an adjudication of juvenile delinquency in 1980 based on a charge of attempted rape. However, the court ruled that the prosecutor would be permitted to cross-examine defendant regarding his 1982 convictions of six felonies (three counts of rape, one of attempted robbery, and one of attempted sodomy), but that the prosecutor would be restricted to eliciting the fact of the convictions, and could not inquire about the underlying facts. At the conclusion of the prosecution case, defense counsel asked the court to reconsider that ruling, but the court adhered to its prior decision, noting that the jury would be instructed that the prior convictions were to be considered only with respect to credibility, and could not be taken as evidence that defendant committed the crime charged or had a propensity to commit such crimes. Peterson elected not to take the stand.

Peterson argues in this Court, as he did on appeal, that this ruling was error. The Appellate Division held that the trial court's decision "balanced the appropriate factors and was a proper exercise of discretion." 777 N.Y.S.2d at 48. Peterson contends that the ruling deprived him of due process by preventing him from testifying in his own defense.

This argument is without merit. First, it is well established that a defendant may not challenge a trial judge's ruling on potential subjects of cross-examination unless he actually testifies and is cross-examined. As the Supreme Court ruled in <u>Luce v. United States</u>, "to raise and preserve for review the claim of improper impeachment with a prior conviction, a defendant must testify," because "a reviewing court cannot assume that the adverse ruling motivated a defendant's decision not to testify." 469 U.S. 38, 43, 42 (1984); <u>see also</u> <u>United States v. Weichert</u>, 783 F.2d 23, 25 (2d Cir. 1986). Although <u>Luce</u> and <u>Weichert</u> involved direct review of a conviction, the rule is no different in the context of collateral review. <u>See</u> <u>Shannon v. Senkowski</u>, No. 00 Civ. 2865, 2000 WL 1683448, at *6 (S.D.N.Y. Nov. 9, 2000); <u>Peterson v. LeFevre</u>, 753 F. Supp. 518, 521 (S.D.N.Y.), aff'd mem., 940 F.2d 649 (2d Cir. 1991); <u>Carroll v. Hoke</u>, 695 F. Supp. 1435, 1439-40 (E.D.N.Y. 1988), aff'd mem., 880 F.2d 1318 (2d Cir. 1989); <u>Underwood v. Kelly</u>, 692 F. Supp. 146, 151 (E.D.N.Y. 1988), aff'd mem., 875 F.2d 857 (2d Cir. 1989).

Second, a <u>Sandoval</u> ruling is primarily a matter of state evidence law. Such questions do not implicate federal constitutional rights unless the evidentiary ruling creates such unfairness that a defendant is denied a fundamentally fair trial. <u>Estelle v. McGuire</u>, 502 U.S. 62, 67-68 (1991) (noting that "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions"). Here, the prosecutor sought to impeach Peterson's credibility as a witness by informing the jury that he was a convicted felon who had been found guilty of extremely serious crimes. Traditional rules of evidence in all American jurisdictions regard such convictions as relevant to credibility. <u>See</u> 3A Wigmore, Evidence § 980, 828 (Chadbourn Rev. 1970); <u>id</u>. § 987, 911 ("Convictions of crimes are everywhere conceded to be

admissible.").  However, that relevance must be balanced against the risk of unfair prejudice to a defendant arising from the risk that a jury might assume a defendant's guilt based on his prior record; applicable rules vary across jurisdictions with respect to the way in which that balance is struck.  Id. § 987, 862 n.1; Sandoval, 34 N.Y.2d at 375.

Here, the trial court engaged in an entirely standard discretionary balancing of prejudice against probative value.  The court excluded one conviction altogether, and limited the potential cross-examination regarding others, but ultimately determined that it would be unfair for the jury not to know, if Peterson took the stand, that the witness they were hearing from was a person with a serious criminal record.  No doubt different judges might strike the balance differently with respect to the precise extent of cross-examination that would be permitted, with some allowing more and some less than was permitted in this case.  Perhaps some would exclude the examination altogether, because of the age of the convictions or for some other reason. Nonetheless, the trial court's ruling was well within the range of reasonable decisions, and in no way rendered Peterson's trial fundamentally unfair.

B. Sufficiency of the Evidence

In addition to the issues presented by his appellate counsel, Peterson submitted a pro se brief on appeal raising a number of other issues, including a challenge to the constitutional sufficiency of the evidence, which he also presses in this Court.  The Appellate Division did not address these claims in detail, but ruled that "[t]he verdicts at both trials were based on legally sufficient evidence," and further noted that it had "considered and rejected . . . [the claims] contained in [Peterson's] pro se supplemental brief."  777 N.Y.S.2d at 48.  Those determinations are rulings on the merits, see Murden v. Artuz, 497 F.3d 178, 198 (2d Cir. 2007), such that

habeas relief may only be granted if the Appellate Division's rejection of Peterson's sufficiency claim was an unreasonable application of Supreme Court caselaw. 28 U.S.C. § 2254(d)(1). The relevant Supreme Court case on this matter is Jackson v. Virginia, which holds that a jury verdict is based on sufficient evidence where "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." 443 U.S. 307, 319 (1979).

The Appellate Division's holding that the evidence was sufficient by this standard was not only reasonable, but inescapable. Peterson's arguments essentially rehash jury arguments regarding alleged inconsistencies in the victims' testimony and other similar matters going to credibility. But questions of credibility are quintessentially matters for the jury, and do not raise constitutional issues of sufficiency for resolution by a habeas court. A habeas court is "not free to second-guess . . . credibility judgments" made by the jury. Taylor v. Curry, 708 F.2d 886, 892 (2d Cir. 1983). Both victims positively and unambiguously identified Peterson as their attacker, both at trial and in pre-trial lineups; both witnesses had lengthy opportunities to observe their attacker during lengthy ordeals. Moreover, expert testimony linked defendant to the crimes, establishing that the DNA in bodily fluids recovered from each victim came from the same person and matched Peterson's DNA, and that the chance that the DNA came from anyone but Peterson was vanishingly small. Whatever minor inconsistencies may have been present in the victims' accounts, the evidence was overwhelming that the crimes charged were committed and that Peterson committed them. Under these circumstances, it is not surprising that Peterson's appellate counsel chose not to challenge the sufficiency of the evidence; the claim is utterly and completely lacking in merit.

C.  The Expert Testimony

Another claim made in Peterson's pro se brief, rejected by the Appellate Division and renewed here, is that the trial court abused its discretion by "allowing the People's expert witnesses to testify beyond the scope of their knowledge and expertise, to assume facts not in evidence, and to state their opinions upon the ultimate facts in issue."  (06 Civ. 811 Pet., Ground Five.)  Although framed by Peterson as a constitutional claim, the objections are essentially matters of state evidence law, and are not cognizable on habeas corpus unless any error rendered the trial fundamentally unfair.  Estelle, 502 U.S. at 67.  Moreover, as Peterson's formulation implicitly recognizes, both federal and state law confide the qualification and questioning of expert witnesses to the discretion of the trial court.  Kumho Tire Co. v. Carmichael, 526 U.S. 137, 153 (1999); People v. Lee, 96 N.Y.2d 157, 162 (2001); De Long v. Erie County, 60 N.Y.2d 296, 307 (1983).  None of Peterson's melange of quibbles with the trial court's rulings comes close to establishing either abuse of discretion or fundamental unfairness of the trial.

D.  Charges Not Submitted to the Jury

Finally, in the last of his pro se claims, Peterson makes a lengthy and somewhat confusing claim that his constitutional rights were violated "when the trial court denied petitioner his fundamental right to demand that the jury find him guilty of every element of the crime(s) charged."  (06 Civ. 811 Pet., Ground Three.)  Reading the petition liberally, as befits a pro se petition for relief, to make every claim that it can be interpreted to assert, the Court construes the petition as making two distinct claims: (1) that the trial judge's dismissal of weapons charges required dismissal of the various sexual assault charges, or made it improper for the jury to consider the knife that was seized from his residence as evidence on those charges,

and (2) that the trial court erred in not submitting certain alleged lesser included offenses to the jury. Neither version of the claim has merit.

Peterson's argument about the knife confuses a question of evidence law with a question of the distinct charges that were made in the case. Among other charges, the indictment charged Peterson with certain counts of criminal possession of a weapon in the fourth degree. See N.Y. Penal L. § 265.01. At the conclusion of the evidence, the trial court, noting that there were fourteen separate charges, asked the prosecutor if he would agree to drop various misdemeanor charges, including the weapons charge, and the prosecutor agreed. Such dismissals are specifically contemplated by N.Y. Crim. Proc. L. § 300.40(6), which permits a trial court to refrain from submitting certain counts to the jury, so as to simplify trial proceedings. With a large number of charges pending, including a number of serious felony charges, the trial court quite reasonably would have concluded that the submission of minor matters to the jury would be an unnecessary distraction. In any event, the separate weapons charges were dismissed, on the prosecution's consent, without objection from defendant.

Peterson, apparently confusing the dismissal of these charges with the suppression or exclusion of the knife from evidence, argues that it was error to permit the jury to consider the knife as part of the evidence in the case, to view the knife in the jury room, or even to consider the charges of rape, sodomy, and sexual abuse in the first degree, since those charges require "forcible compulsion," N.Y. Penal L. §§ 130.35, 130.50, 130.65, and the case was tried on the theory that Peterson's use of the knife established that element. If the knife had been suppressed, excluded, stricken, or not admitted, then of course it would have been fundamentally improper to permit the jury to consider an exhibit that was not in evidence. But none of these conditions

pertained to this case.  The trial court denied a pre-trial motion to suppress the knife, and

admitted the knife into evidence at trial.  The trial court never reversed that ruling or struck the

knife from evidence, nor did Peterson ever ask the court to do either in connection with the

dismissal of the misdemeanor charges.  The trial record includes testimony that the knife had

been recovered from Peterson's residence, testimony from both victims that Peterson had used a

knife in attacking them, and testimony from the victim NS that the knife in question looks like

the knife that was used in the crime.  The knife was thus properly admitted as relevant evidence

with respect to the charges of rape, sodomy, and sexual abuse, and it remained in the case until

the end.

　　　　The withdrawal of the charges of weapons possession had no effect on the admissibility

of the knife, or on its status as evidence in the case.  A prosecutor has broad discretion to

withdraw charges that have been brought, and under New York law a court has some discretion

to decline to submit charges to the jury.  N.Y. Crim. Proc. L. § 300.40(6)(b).  Peterson did not

object to the withdrawal of the charges, and offers no plausible explanation of how he could

have been prejudiced by the withdrawal of additional charges.  Accordingly, there is no basis for

any finding of error, let alone for a finding of violation of constitutional rights, in the withdrawal

of the charges, in the admission of the knife, or in the trial court's failure to sua sponte strike the

knife from the record.

　　　　Peterson's suggestion that the trial court should have submitted alleged lesser included

offenses to the jury is no more persuasive.  First, to the extent that the argument is premised in

any way on the claim that the knife was not or should not have been in evidence, the premise is

incorrect.  Second, as a claim that was made in Peterson's pro se brief and rejected by the

Appellate Division, the claim may only support habeas corpus relief if the state courts' decision represented an unreasonable application of federal constitutional law, as reflected in the decisions of the Supreme Court of the United States.  28 U.S.C. § 2254(d)(1).  Thus, habeas claims must be grounded in holdings of the Supreme Court, not in Supreme Court dicta or the holdings of courts of appeals.  Carey v. Musladin, 127 S.Ct. 649, 653 (2006); Rodriguez v. Miller, 499 F.3d 136, 140 (2d Cir. 2007).

The Supreme Court has held that due process requires a trial court to submit jury instructions on lesser included offenses in capital cases if such a charge is warranted by the evidence.  Beck v. Alabama, 447 U.S. 625, 627 (1980).  However, as the Second Circuit has observed, "[n]either the Supreme Court nor this circuit has decided whether the failure to instruct a jury on lesser included offenses in non-capital cases is a constitutional issue that may be considered on a habeas petition."  Knapp v. Leonardo, 46 F.3d 170, 179 (2d Cir. 1995).  Thus, Peterson cannot establish that a particular declination by a New York trial court to submit a requested lesser included offense to the jury is an unreasonable application of Supreme Court law, given that there is no Supreme Court authority holding that the Constitution requires a trial court to submit *any* lesser included offense to the jury in a non-capital case.

In any event, even assuming arguendo that a refusal to submit a proper lesser included offense to the jury in a non-capital case would violate due process, there is no basis in this record on which to conclude that the state court's refusal to grant defense counsel's requests in this case would be an unreasonable decision.  Peterson argues that the jury should have been instructed about the offenses of coercion in the second degree, and rape and sodomy in the third degree. Under New York law, a court may submit a lesser included offense to the jury if, among other

things, "there is a reasonable view of the evidence which would support a finding that the defendant committed such lesser offense but did not commit the greater."  N.Y. Crim. Proc. L. § 300.50(1).  Here, the trial court correctly determined that there was no reasonable view of the evidence that would support the lesser offenses.

The distinction between first and third degree rape in New York is that first degree rape requires "forcible compulsion" where the victim is at least thirteen years of age and not physically helpless, N.Y. Penal L. § 130.35, while third degree rape (apart from certain cases in which the sexual act constitutes rape because of the victim's age, which are not applicable here), involves unconsented sex "where the lack of consent is by reason of some factor other than incapacity to consent," N.Y. Penal L. § 130.25.  The same is true of the corresponding sodomy offenses.  N.Y. Penal L. §§ 130.50, 130.40.  The victims' testimony was clear that Peterson threatened them with a knife.  The victims' testimony, if believed, thus established a case of forcible compulsion.  The jury need not have believed the witnesses, but if it did not, the correct verdict was acquittal, not conviction of the lesser charge; there was no evidence in the record that could support a conclusion that Peterson engaged in sexual acts with the victims, without their consent, where the lack of consent resulted from some factor other than the threat of force. Similarly, there was no basis in the evidence for finding that Peterson compelled either victim by threat of physical injury to do something other than to engage in sexual acts, so as to constitute coercion in the second degree.  N.Y. Penal L. § 135.60.  The evidence of sexual contact here was overwhelming, and the victims' testimony of knife point threats clearly went beyond mere "threat of physical injury."  Thus, it was hardly unreasonable for the trial court to conclude that

there was no reasonable view of the facts on which Peterson did not do what the victim-witnesses claimed, but nevertheless did engage in coercion in the second degree.

Accordingly, Peterson's claims with respect to the matters submitted or not submitted to the jury are without merit.

III.     Claims Relating to the Second Trial

Peterson's principal claims relating to the second trial, although formulated in a variety of ways, challenge the sufficiency of the evidence. Thus, Peterson argues that the evidence failed to prove identification, failed to establish the offenses charged, and was against the weight of the evidence. (06 Civ. 41 Pet., Grounds Three and Four.) The Appellate Division expressly found that the evidence at both of Peterson's trials was sufficient to support the guilty verdicts. 777 N.Y.S.2d at 48. The legal standards applicable to these claims have already been discussed: as set forth above, habeas relief may only be granted if the Appellate Division's conclusion was an unreasonable application of the principle that a verdict is supported by sufficient evidence if, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson, 443 U.S. at 319.

The Appellate Division's ruling was not merely reasonable but correct. Peterson's argument that the evidence was insufficient to establish guilt simply rehashes jury arguments that the victim-witness EW was mistaken, such as the argument that EW placed the knife in her attacker's right hand, while he claims to be left-handed, or that EW described her attacker as having a light beard, when his arrest photo two days later shows a heavier one, or that no fingerprints or DNA evidence was presented. However, the evidence of a single eyewitness, if

18

believed by the jury, is sufficient evidence to support a guilty verdict. United States v. Frampton, 382 F.3d 213, 222 (2d Cir. 2004). Here, the victim-witness had a lengthy opportunity to observe her attacker, and she selected him from a lineup within days of the crime. Moreover, the identification does not stand alone: a knife, clothes, and jewelry matching items EW saw on her attacker, including a ring with the initial "P," were recovered from Peterson's residence, and a guilty verdict "may be based entirely on circumstantial evidence as long as the inferences of culpability drawn from the circumstances are reasonable." United States v. MacPherson, 424 F.3d 183, 190 (2d Cir. 2005).

Peterson's argument that the evidence was insufficient to establish the crime of sodomy is equally without merit. As respondent points out, this claim was never presented to the state courts, and therefore is unexhausted and, at this stage of proceedings, forfeited. Sawyer v. Whitley, 505 U.S. 333, 338 (1992); Washington v. James, 996 F.2d 1442, 1447 (2d Cir. 1993); Grey v. Hoke, 933 F.2d 117, 121 (2d Cir. 1991). In any event, however, Peterson's argument is based on the claim that "penis to anus contact" was not proven beyond a reasonable doubt because EW simply "assumed" that this conduct occurred. (06 Civ. 41 Pet., Ground Four.) Peterson mischaracterizes the evidence. A witness may testify to what she has experienced through *all* her senses, not merely to what she saw. Although (as Peterson emphasizes) EW did not testify to seeing her assailant's penis, which was impossible given their physical positions at the time, she testified to what she heard (the attacker pulling down his pants, and then spitting "as if to lubricate himself") and felt (his finger, and then his penis, at her anus). On cross-examination, defense counsel questioned her in detail about precisely what she felt, and the basis for her conclusion that what she felt the second time was a penis rather than a finger. The jury

thus had ample basis to evaluate the credibility of EW's testimony about what she experienced, and the jury was entitled to accept that testimony. The evidence was thus sufficient to establish guilt on this charge.

Finally, to the extent Peterson claims that the verdicts were "against the weight of the evidence," such a claim is not cognizable on habeas corpus, since it appeals to a power vested in the Appellate Division under state law, see People v. Bleakley, 69 N.Y.2d 490, 495 (1987); N.Y. Crim. Proc. L. § 470.15(5); Estelle, 502 U.S. at 67-68, and not to federal constitutional law. See Maldonado v. Scully, 86 F.3d 32, 25 (2d Cir. 1996) (In habeas petition seeking to set aside New York state criminal conviction, "[a]ssessments of the weight of the evidence or the credibility of witnesses are for the jury and not grounds for reversal on appeal."); Ex parte Craig, 282 F. 138, 148 (2d Cir. 1922) ("[A] writ of habeas corpus cannot be used to review the weight of evidence . . .") aff'd, 263 U.S. 255 (1923); Young v. Kemp, 760 F.2d 1097, 1105 (11th Cir. 1985) ("A federal habeas court has no power to grant habeas corpus relief because it finds that the state conviction is against the 'weight' of the evidence . . .").[1] See also United States v. Dhinsa, 243 F.3d 635, 648-49 (2d Cir. 2001) (noting that the "scope of intermediate appellate review under [the New York statute authorizing the weight-of-the-evidence review is] broad and unique" (citation and internal quotation marks omitted)).

---

[1] Numerous trial courts in this circuit have also so concluded. See, e.g., Cephas v. Ercole, No. 07 Civ. 6048, 2008 WL 1944837, at *4 (S.D.N.Y. April 29, 2008); Miles v. Smith, No. 05 Civ. 1200, 2008 WL 1809401, at *6 (N.D.N.Y. April 21, 2008); Guerrero v. Tracey, 425 F. Supp. 2d 434, 447 (S.D.N.Y. 2006); Feliz v. Conway, 378 F. Supp. 2d 425, 430 n.3 (S.D.N.Y. 2005); see also Mitchell v. Artus, No. 07 Civ. 4688, 2008 WL 2262606, at *17 & n.23 (S.D.N.Y. June 02, 2008) (Peck, M.J.) (collecting cases).

IV.    Claims Relating to the Appeal

As noted above, Peterson amended his petition to include claims made in his state *coram nobis* petition, in which he argued that his appellate counsel provided ineffective assistance by failing to present a number of arguments that Peterson believes had merit.  The briefing before the Appellate Division addressed solely the merits of the claims (see Levin Aff. Ex. 7), and the Court rejected those claims, concluding that "upon reading . . . the papers with respect to the motion," Peterson's "claim of ineffective assistance of appellate counsel, and for related relief" was "denied," (Order of Oct. 26, 2006, Levin Aff. Ex. 8).  The Appellate Division therefore rendered an "adjudication on the merits," see Sellan v. Kuhlman, 261 F.3d 303, 314 (2d Cir. 2001),[2] entitled to deference unless it involved an unreasonable application of Supreme Court holdings.  28 U.S.C. § 2254(d)(1).

The legal standard for assessing claims of ineffective assistance of counsel is well established.  A criminal defendant must "show that his lawyer's performance 'fell below an objective standard of reasonableness' and that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'"  United States v. Abad, 514 F.3d 271, 275 (2d Cir. 2008), quoting Strickland v. Washington, 466 U.S. 668, 688, 694 (1984).  The Supreme Court has refined that standard more specifically with respect to claims that appellate counsel omitted arguments that a defendant wanted to assert,

_____

[2] The Appellate Division's order in Sellan was materially indistinguishable from the order at issue here.  Sellan, 261 F.3d at 308, 314.  As in Sellan, there is "no basis for believing that the Appellate Division rejected the claim on non-substantive grounds."  Id. at 314.  See also Jimenez v. Walker, 458 F.3d 130, 144 (2d Cir. 2006).

holding that counsel is not ineffective "if counsel, as a matter of professional judgment, decides not to present those points." Jones v. Barnes, 463 U.S. 745, 751 (1983).

With respect to both trials, petitioner argues that his appellate counsel misstated or failed to present certain facts in the briefs submitted to the Appellate Division. Indeed, Peterson's brief on his state *coram nobis* application, which he has incorporated by reference into his amended habeas corpus petition here, offers a minutely-detailed re-edit of his appellate attorneys' briefs. But these suggested edits, even on the few occasions where they identify actual errors, fall far short of showing that counsel's performance fell below an appropriate professional standard. Moreover, Peterson utterly fails to show that the editorial changes he proposes could have made any difference to the outcome of his appeal. As respondent points out, many of the "corrections" Peterson makes to counsel's brief were before the Appellate Division via his own pro se supplemental brief with respect to his first trial, and the prosecutors' briefs in opposition, not to mention the trial transcripts which were part of the record before the court. (Resp. Mem. 26.) Finally, nothing that Peterson highlights makes the slightest difference to any of the legal issues discussed by the Appellate Division or by this Court.

Peterson next argues that his attorney was ineffective in failing to make a variety of arguments. Even to the extent that these arguments were non-frivolous, the Supreme Court, as noted above, has made clear what every experienced appellate attorney knows: since the best strategy is to focus an appellate court's attention on the most persuasive points, a lawyer does not provide ineffective assistance by failing to present non-frivolous issues "if counsel, as a matter of professional judgment, decides not to present those points." Jones, 463 U.S. at 751. Peterson fails to show that his counsel's professional judgment was wrong in failing to raise the

points he now asserts should have been made, still less that he was prejudiced by that failure, and he does not remotely demonstrate that the Appellate Division applied <u>Strickland</u> and <u>Jones</u> unreasonably in rejecting his claims.

With respect to the appeal of his convictions at his first trial, Peterson's arguments face the insuperable obstacle that the very points he argues counsel was ineffective in making were in fact presented to the Appellate Division by Peterson himself in his supplemental pro se brief. The Appellate Division considered and rejected them, and this Court has already found them meritless on this petition. Counsel did not act unprofessionally in failing to assert Peterson's totally misguided claims about the dismissal of the weapons charge (<u>see</u> Part IID above) or his meritless objections to aspects of the prosecution's expert testimony (<u>see</u> Part IIC above).

With respect to his appeal of the result of his second trial, Peterson raises a number of issues that were not presented to the Appellate Division by his appellate counsel. The most significant of these issues is the claim that his trial counsel was ineffective. But this claim is wholly without merit. Peterson's argument on this score presents a series of challenges to trial counsel's tactical decisions. But as is well established that, in evaluating a claim for ineffective assistance of counsel, courts "will not second-guess trial counsel's defense strategy simply because the chosen strategy has failed." <u>United States v. DiTommaso</u>, 817 F.2d 201, 215 (2d Cir. 1987); <u>see</u> also <u>Kieser v. New York</u>, 56 F.3d 16, 18 (2d Cir. 1995); <u>United States v. Helgesen</u>, 669 F.2d 69, 72 (2d Cir. 1982). The judgments Peterson challenges were all well within the range of reasonable professional judgment.

(1) Peterson criticizes trial counsel for failing to make an opening statement, but as he himself acknowledges, this was the product of a strategic decision to "wait and see how the

[P]eople presented their case before he committed to any particular defense." (Coram Nobis Aff. ¶ 81.)  Given the difficulty of defending against a strong prosecution case, this was not an unreasonable choice.  (2) Peterson argues that trial counsel should have objected to the prosecutor's proposal to amend the indictment to charge sexual abuse in the form of placing his finger in the victim's anus instead of placing his hand on her buttocks, as originally charged in one of the counts.  But any objection would have been unsuccessful under state law, which permits an indictment to be amended at trial "with respect to . . . variances from the proof relating to matters of form, time, place, names of persons and the like," absent prejudice to defendant or other factors not present here.  N.Y. Crim. Proc. L. § 200.70.  Here, the indictment gave clear notice to defendant, and the change in the precise details of which part of Peterson's hand touched what portion of EW's posterior could not have been prejudicial to his defense, which was essentially one of misidentification.  (3) Peterson contends that trial counsel harmed his case by calling a crime scene detective to testify.  The detective was called for the entirely standard purpose of showing the sorts of incriminating evidence, such as fingerprints, that were *not* found at the scene.  Peterson suggests that it was error to call the detective that the prosecutor indicated was available to testify, instead of finding some other witness to testify, because the witness called was (according to Peterson) hostile and biased.  But it was a reasonable choice to call an actual crime scene detective rather than an outside "expert," and Peterson provides absolutely no reason to believe that any other witness would have testified differently.  (4) Finally, Peterson challenges his trial attorney's decision to admit in summation that "something did in fact happen" to the victim.  (Coram Nobis Aff. ¶¶ 87-88.)  It is difficult to conceive that counsel could have made much headway with the jury by contending that the victim made up the

24

entire incident; strong as the victim's identification was, counsel's decision to argue mistaken identity was all but inevitable. Without doubt, it was a reasonable professional choice, and appellate counsel was entirely justified in refusing to attack it.

Peterson's other omitted appellate claims are even weaker. The claim that Peterson was excluded from the courtroom during a readback of certain testimony during jury deliberations is unsupported by the record; the argument that counsel on appeal failed to attack the victim's identification is both wrong (counsel devoted a major part of the brief to such an attack) and unavailing (the Appellate Division quite reasonably found the verdict amply supported by the evidence); the attack on the minor amendment of one count of the indictment is, as already noted, without merit; and the complaint that counsel should have sought reversal based on a single ambiguous remark of a witness regarding prior testimony posits an argument that would surely have been rejected by any appellate court as at worst a harmless error, if error at all. None of these arguments could conceivably have led to reversal of Peterson's amply warranted convictions for a series of vicious crimes. Accordingly, it was reasonable for appellate counsel to select other avenues for attack, and petitioner was not prejudiced by their omission from the appellate brief.

V.     Additional Arguments

Peterson's lengthy reply papers, consisting of three separate briefs, largely repeat and reformulate arguments already made, or incorporate by reference pleadings already filed. (See No. 06 Civ. 0041 Reply; No. 06 Civ. 0811 Reply; Nos. 06 Civ. 0041 & 06 Civ. 0811 Reply.) In his reply, petitioner asserts that the Department of Corrections lost some of his property in the course of transferring him from one facility to another, including transcripts and legal documents

related to this case, and requests that the Court "apply the proper legal standards to the facts of this case," "assign an attorney to Petitioner to prepare arguments and apply the proper case law to support Petitioner's claim," or allow him "additional time to conduct research and formulate an argument." (No. 06 Civ. 0041 Reply 10.) As detailed in this Opinion, the Court has applied the proper legal standards to the facts of his case, and has found his claims of error to be meritless.

Peterson's requests for counsel and additional time to file yet another brief will be denied. This Court extended his deadline for filing a reply by more than six months (see Order of February 27, 2008), and petitioner has had plenty of time to formulate a reply, as his papers, consisting of three briefs and approximately eighty-five pages of legal argument, amply demonstrate. As for appointed counsel, "[e]ven where a federal defendant raises an ineffectiveness claim for the first time through a habeas petition, there is no constitutional right to counsel." Murden, 497 F.3d at 194. See also Pennsylvania v. Finley, 481 U.S. 551, 554-55 (1987); Love v. McCray, 413 F.3d 192, 194 (2d Cir. 2005). A court may authorize counsel for a habeas petitioner when "the interests of justice so require," 18 U.S.C. § 3006A(2)(B), but as petitioner's claims are meritless, such is not the case here. See, e.g., Rodriguez v. United States, 111 F. Supp. 2d 112, 115 (D. Conn. 1999).

## CONCLUSION

The length of this opinion is a function of the number of arguments made by Peterson, rather than of the merit, or even difficulty, of any of them. None of the grounds he presents in seeking habeas corpus with respect to either of his convictions has the slightest merit. Accordingly, the petitions are denied. Because petitioner has not made a substantial showing of

the denial of a constitutional right, a certificate of appealability will not issue as to either petition. See 28 U.S.C. § 2253(c)(2) ("A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."); Lucidore v. N.Y. State Div. of Parole, 209 F.3d 107, 111-13 (2d Cir. 2000) (upholding issuance of a certificate of appealability upon finding of a substantial showing that a constitutional right had been denied). Petitioner may, however, pursue any further appellate remedies *in forma pauperis*.

SO ORDERED.

Dated: New York, New York
       June 18, 2008

GERARD E. LYNCH
United States District Judge

27